CITY OF DULUTH, Respondent,

v.

John William SARETTE, James Leroy
Pichotta, and Robert Bernard
Fox, Appellants.

No. 48920.

Supreme Court of Minnesota.

Aug. 31, 1979.

Houge & Mosher and Benjamin S. Houge, Minneapolis, for appellants.

William P. Dinan, City Atty., and Timothy O. Lee, Asst. City Atty., Duluth, for respondent.

Heard before ROGOSHESKE, PETERSON, KELLY, and YETKA, JJ., and considered and, decided by the court en banc.

ROGOSHESKE, Justice.

Defendants were charged with six separate violations of Duluth City Code, § 34–12, which makes it unlawful for any person " * * * knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish * * * any obscene book, magazine, * * * motion picture film, * * * or other arti-

cle which is obscene." [1] After summary trials to the county court, they were found guilty and fined $300 per violation.[2] Defendants appealed to a three-judge panel of the district court, challenging the constitutionality of the ordinance, denial of a jury trial, and the impartiality of the trial judge. The panel, finding neither constitutional nor procedural infirmities, affirmed the convictions. Defendants then petitioned this court for permission to appeal on the ground that the cases presented important constitutional questions. We granted discretionary review. The principal issues on appeal are: (1) Whether a provision of Duluth City Code, § 34–12, exempting certain recognized schools, museums, churches, governmental agencies and physicians from its coverage is facially unconstitutional by reason of the equal protection clause, and (2) whether the defendants were entitled to a trial by jury, although under Duluth City Code, § 34–12, there was no possibility of incarceration. We conclude that the exemption violates the equal protection clause but that the main portion of the ordinance, which adopts the obscenity criteria set out in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1966), is not rendered void by the impermissible exemption. We further conclude that defendants were entitled to a jury trial. Accordingly, we reverse and remand.

Defendants first contend that the exemption provision of § 34–12 constitutes a denial of equal protection because it affords disparate treatment to similarly situated groups and individuals.[3] The challenged exemption reads as follows:

"The following are exempt from the provisions of this section:

"(a) Recognized and established schools, churches, museums, medical clinics, hospitals, public libraries, governmental agencies or quasi-governmental sponsored organizations, and persons acting in their capacity as employees or agents of such organizations and a licensed physician or psychiatrist while engaged in his practice. For the purpose of this section 'recognized and established' shall mean a school having a full-time faculty and diversified curriculum; a church affiliated with a national or regional denomination; a medical clinic comprised of licensed physicians or psychiatrists; and in the case of all other exempt organizations shall refer only to income tax exempt organizations which are supported in whole or in part by tax funds or which receive at least one-third of their support from publicly donated funds.

"(b) Parents disseminating material to their children."

A careful reading reveals that the ordinance places no limits on the uses to which obscene material may be put by exempt organizations. Defendants assert, therefore, that exempt organizations under the ordinance may without criminal liability freely disseminate, sell, and profit from precisely the same material which they here sold.

It has long been established that not all legislative classifications are constitutionally infirm. In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the United States Supreme Court faced an equal protection challenge to a "Sunday closing law" which clearly did not treat all retail stores alike. In upholding the statute, the court stated:

" * * * Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups

1. The challenged ordinance was passed into law by a vote of the electorate following our decision in *Bogen v. Sheedy*, 304 Minn. 62, 229 N.W.2d 19 (1975).

2. Separate trials on five charges were held on December 13 and 14, 1976. The sixth charge was tried before the court on September 20, 1976. Because all the defendants are raising essentially the same issues on this appeal, they will be discussed together except where otherwise noted.

3. Defendants do not challenge the constitutionality of the main portion of the obscenity ordinance. We therefore restrict our discussion to the classifications created by the exemption.

of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 366 U.S. 425, 81 S.Ct. 1105, 6 L.Ed.2d 399.

Accord, *State v. Reps*, 302 Minn. 38, 223 N.W.2d 780 (1974); *Anderson v. City of St. Paul*, 226 Minn. 186, 32 N.W.2d 538 (1948). Here, the city asserts that the exemption serves the important function of permitting the exempted organizations to disseminate or utilize obscene material for legitimate educational, scientific, or artistic purposes without fear of criminal prosecution. We believe that such an objective is justified and rationally related to a legitimate governmental purpose. It is essential that governmental units, by prohibiting the sale or dissemination of obscene materials, do not at the same time stifle scientific, medical, educational, or other bona fide uses.

■ The question for our determination is whether the challenged exemption is a reasonable means of attaining the legitimate end of safeguarding constitutionally protected expression. We believe that the exemption is deficient in that by providing total immunity for particular groups and institutions regardless of their use of the material or the context in which it is used, the city necessarily created arbitrary and over-broad classifications which have little relevance to the exemption's ultimate purpose. In particular, we are disturbed by the latter portion of the exemption defining "quasi-governmental sponsored organizations" as "income tax exempt organizations which are supported in whole or in part by tax funds or which receive at least one-third of their support from publicly donated funds." The phrase "income tax exempt organizations" is ambiguous as to which organizations are exempt under the ordinance. Clearly, many public and private

colleges and universities, welfare organizations, public service groups, and organized religions conduct activities that are taxable and at the same time own or use property or engage in activities that are clearly tax exempt. We agree with the Supreme Court of Tennessee that: " *   *   *   [T]he use of taxable entity for inclusion and nontaxable entity for exclusion is too nebulous, too lacking in definite limits, and too vague to inform men of common intelligence who is included and who is exempt from the criminal penalties   *   *   *." *Leech v. American Booksellers Assn., Inc.*, 582 S.W.2d 738, 755 (Tenn.1979).

■ The exemption's deficiency is exacerbated by the portion which arbitrarily excludes from prosecution organizations which receive at least one-third of their support from publicly donated funds. We see no rational basis for such a distinction. It is not apparent that an organization receiving more than one-third of its support from publicly donated funds is more likely to have a legitimate need to disseminate the materials in question than one receiving only 25 percent of its support from the public. Moreover, there are undoubtedly organizations which could conceivably obtain tax-exempt status and muster support from the public, but whose objective in distributing such material would have no purpose other than an appeal to the prurient interest; yet, under the exemption, such an organization would be afforded protection from prosecution. We foresee not only enforcement problems but, because of the ordinance's vague attempt to immunize particular distributors rather than to safeguard the allegedly obscene material itself, confusion as to who must adhere to this law. As a result, the unwarranted deterrence of the dissemination of constitutionally protected materials may well occur. For these reasons we conclude that the exemption provision of the ordinance is arbitrary and unreasonable.

■ We do not believe, however, that these deficiencies necessitate invalidating the entire ordinance. By striking down the

exemption provision alone, we do not alter the intended effect of the ordinance, because protection of legitimate uses of pornographic materials is afforded by the main provisions of the ordinance. Those provisions incorporate the established test for obscenity and, therefore, in our view render the exemption provision superfluous. In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1966), the United States Supreme Court set out the most recent test for obscenity, requiring, inter alia, that before a work may be adjudged obscene it must be found, taken as a whole, to lack "serious literary, artistic, political, or scientific value." 413 U.S. 24, 93 S.Ct. 2615, 37 L.Ed.2d 431. By so limiting this test for obscenity, the court assured that works entitled to First Amendment protection by reason of their legitimate value would not be suppressed as obscene. The city of Duluth incorporated the *Miller* requirement in its definition of obscene material. Duluth City Code, § 34–12(b)(3). Therefore, although the exemption provision is no longer valid, material which has serious value under *Miller* will not be stifled.

■ In determining whether material has serious value, it is imperative that it be viewed in the context in which it was utilized and considered in conjunction with its avowed purpose. Such an approach is suggested by *Miller*:

> " * * * The First Amendment protects works which, taken as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people approve of the ideas these works represent. 'The protection given speech and press was fashioned to assure unfettered interchange of *ideas* for the bringing about of political and social changes desired by the people,' * * *. But the public portrayal of hard-core sexual conduct for its own sake, and for the ensuing commercial gain, is a different matter." 413 U.S. 34, 93 S.Ct. 2620, 37 L.Ed.2d 437.

To look at the material alone, without considering its use and purpose, would be to ignore the basis of the right which is at stake. Freedom of expression presupposes the development of ideas by use of a complex variety of methods. To examine one feature of the total process and characterize it as obscene would be no different than to excise the allegedly obscene passages of a literary masterpiece. In either case the expression is destroyed. Thus it is apparent that the purpose of the material and the context in which it is used are essential considerations in the determination of obscenity.

■ The deletion of the exemption and utilization of the *Miller* guidelines as the appropriate test are consistent with constitutional mandates. By focusing on the material itself, the ultimate determination is much more likely to bear some rational relationship to the legitimate interest of the municipality than a determination under the present scheme, without at the same time being either over or under-inclusive. Despite the fact that the Duluth ordinance has no severability provision, our invalidation of the exemption clause does not render the remaining portions void. The constitutionally deficient section is, as noted above, superfluous because of the safeguards to constitutionally protected expression afforded by *Miller*. Thus, we have not altered the effect of the ordinance but have merely excised the impermissible exemption, holding the rest of the ordinance constitutional. By construing the ordinance in this manner, not only will we reflect the intent of the city and its electorate, but we also best effectuate our duty to construe a statute or ordinance, if at all possible, in a way that is consistent with the constitution. See, *State v. Hipp*, 298 Minn. 81, 213 N.W.2d 610 (1973); *State ex rel. Olsen v. Board of Control*, 85 Minn. 165, 88 N.W. 533 (1902).

■ Defendants next contend that they are entitled to a jury trial, although the ordinance does not prescribe imprisonment as a possible sanction. They assert that because of the unique guidelines set out in *Miller*, requiring the trier of fact to consider "whether 'the average person, applying contemporary community standards'

would find that the work, taken as a whole, appeals to the prurient interest," 413 U.S. 24, 93 S.Ct. 2615, 37 L.Ed.2d 430, a jury can best reflect contemporary community standards. We agree. The *Miller* decision assumes that the critical determination of obscenity will be made by a jury, although it does not require a jury finding. The court stated: "In resolving the inevitably sensitive questions of fact and law, we must continue to rely on the jury system accompanied by the safeguards that judges * * provide * * *." 413 U.S. 26, 93 S.Ct. 2616, 37 L.Ed.2d 432. The need for a jury determination is particularly compelling in cases such as this where no expert testimony or extrinsic evidence other than the allegedly obscene material itself is admitted at trial.[4] When the issue is tried to the court, a judge is placed in the unenviable position of determining contemporary community standards, either upon impressions formed from his contacts with residents or upon his individual opinion of the locality's values. Neither of these alternatives is wholly consistent with the test enunciated in *Miller*. In contrast, a jury represents a cross section of the community and is better equipped to make the important and sensitive determination of community standards required in an obscenity prosecution. Although it is clear that a jury trial is not constitutionally mandated under these circumstances, see *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), we believe that the contemporary-community-standards test can best be applied by a jury and therefore hold, under the supervisory powers of this court, that a criminal obscenity charge must be tried to a jury. Because defendants were denied a jury trial, we must reverse the convictions and remand the cases for new trials. We need not reach the remaining issues raised

by defendants, and we intimate no opinion with respect to their disposition.

Reversed and remanded.

---

4. In *State v. Welke*, 298 Minn. 402, 409, 216 N.W.2d 641, 647 (1974), we stated: "Whether, to 'the average person applying contemporary community standards' the material is 'patently offensive' or 'appeals to prurient interest' does not require the assistance of expert testimony and is a question of fact for the trier of fact to determine from the material itself, when placed in evidence * * *."

Our decision is not limited, however, to cases in which no extrinsic evidence is admitted. Even where expert testimony is presented, we believe a jury should still make the finding with respect to community standards.