The UPPER MIDWEST BOOKSELLERS
ASSOCIATION, a Minnesota corpora-
tion, and Harvey Hertz, d/b/a A Broth-
er's Touch Bookstore, Plaintiffs,

v.

The CITY OF MINNEAPOLIS, a
municipal corporation,
Defendant.

No. Civ. 4–85–5.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 25, 1985.

Randall D.B. Tigue, Volunteer Atty., Minnesota Civil Liberties Union, Minneapolis, Minn., for plaintiffs.

Robert J. Alfton, Minneapolis City Atty., and David M. Gross, Asst. City Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary and permanent injunction[1] restraining the City of Minneapolis from enforcing that portion of a city ordinance which would prohibit the open display of sexually explicit materials which are deemed harmful to minors.

### FACTS

The action before the Court is a first amendment challenge to a Minneapolis city ordinance which requires that certain sexually explicit books, magazines, and other materials[2] deemed harmful to minors be kept in sealed wrappers and that the covers of certain materials be blocked with an opaque cover. Minneapolis Ordinances, § 385.131. Plaintiffs are the Upper Midwest Booksellers Association, an incorporated trade organization of booksellers, publishers, and representatives with members in Minnesota, Wisconsin, North and South Dakota, and Iowa, and Harvey Hertz, doing business as A Brother's Touch Bookstore. The parties have stipulated that under defendant's construction of the ordinance, plaintiffs may have material on display in their stores which would fall within the restrictions of the ordinance.

The challenged portion of the ordinance provides as follows:

(6) It is unlawful for any person commercially and knowingly to exhibit, display, sell, offer to sell, give away, circulate, distribute, or attempt to distribute any material which is harmful to minors in its content in any place where minors are or may be present or allowed to be present and where minors are able to view such material unless each item of such material is at all times kept in a sealed wrapper.

(a) It is also unlawful for any person commercially and knowingly to exhibit, display, sell, offer to sell, give away, circulate, distribute, or attempt to distribute any material whose cover, covers, or packaging, standing alone, is harmful to minors, in any place where minors are or may be present or allowed to be present and where minors are able to view such material unless each item of such material is blocked from view by an opaque cover. The requirement of an opaque cover shall be deemed satisfied concerning such material if those portions of the cover, covers, or packaging containing such material harmful to minors are blocked from view by an opaque cover.

§ 385.131(6).[3] The effect of the above provision is that the contents and the covers of

---

**1.** The Court's opinion incorporates the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52.

**2.** The provisions of the ordinance apply to "written, photographic, printed, sound, or published materials." Minneapolis Ordinances, § 385.131 (1),(2). The Court describes proscribed materials under the ordinance as "books and magazines" at various points in this opinion. These references are intended as stylistic conveniences rather than all-inclusive descriptions of the ordinance's coverage.

**3.** The challenged portion of the ordinance has been amended since the institution of this action. Subsection 6 of the ordinance, as originally enacted by the City Council and signed into law by the Mayor on June 13, 1984, provided as follows:

(6) It is unlawful for any person knowingly to exhibit, display, sell, offer to sell, give away, circulate, distribute, or attempt to distribute any material which is harmful to minors in any place where minors are or may be present or allowed to be present and where minors are able to view such material unless each item of such material is at all times kept in an opaque sealed wrapper.

(a) The provisions of this subdivision shall also apply to each item of material visually depicting nudity, sexual conduct or sexual excitement, upon the cover, covers, or packaging of the material. The requirement of an opaque cover shall be deemed satisfied concerning the visual depictions of nudity, sexual

material are judged separately under the ordinance. If the contents of a book or magazine contain material that is deemed harmful to minors, the publication must be kept in a sealed wrapper. If the cover of a book or magazine visually depicts proscribed material, those portions of the cover must be blocked with an opaque cover. A publication could conceivably have a cover which falls within the ordinance and contents which do not, or vice versa. "Harmful to minors" is defined in the ordinance as follows:

> "Harmful to Minors" means that quality of any description or representation, in whatever form, of nudity, sexual conduct, or sexual excitement, when it:
>
> (1) predominantly appeals to the prurient, shameful, or morbid interest of minors in sex; and
>
> (2) is patently offensive to contemporary standards in the adult community as a whole with respect to what is suitable sexual material for minors; and
>
> (3) taken as a whole, lacks serious literary, artistic, political or scientific value.

*Id.* § 385.131(3)(e).

The ordinance contains two significant exemptions. First, the ordinance does not apply if minors are not able to view the proscribed material or the covers of such material. Businesses can comply with the ordinance by totally barring minors from the establishment or by physically segregating the proscribed materials so that minors do not have access to and cannot view the materials, and by posting a sign which reads "Adults Only—you must be 18 to enter." *Id.* § 385.131(6)(b). The second exemption applies to recognized and estab-

lished schools, religious institutions, museums, medical clinics and physicians, hospitals, public libraries, governmental agencies, and individuals in a parental relationship with the minor. *Id.* § 385.131(7)(a), (b).

There have been no prosecutions under the ordinance. Plaintiffs brought the instant action for declaratory and injunctive relief shortly after the ordinance took effect on January 1, 1985, and the Court issued a temporary restraining order enjoining enforcement of the ordinance on January 7, 1985.

## DISCUSSION

 Although the language of the first amendment speaks in absolute terms, it is clear that not all pure speech falls within the protection of the amendment. In *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), the United States Supreme Court stated that

> [t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene.... It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Id.* at 571–572, 62 S.Ct. at 768–769 (footnotes omitted). It is now well settled that obscene material is not within the area of constitutionally protected free speech or press. *Miller v. California*, 413 U.S. 15,

---

conduct, or sexual excitement, if those portions of the cover, covers, or packaging containing the visual depictions are blocked from view by the opaque cover.
This portion of the ordinance took effect on January 1, 1985. Plaintiffs' complaint in the instant case was filed on January 2, 1985. The ordinance was amended to its current form subsequent to the hearing on plaintiffs' motion for preliminary and permanent injunctive relief which was held on January 22, 1985. The amendments were passed by the City Council on

January 25, 1985 and signed by the Mayor on January 30, 1985, and are presently in effect.
The Court has given counsel an opportunity to comment upon the effect of the amendments on the present litigation. Neither side has any objection to the Court's determining the constitutionality of the ordinance as amended. Since there have been no prosecutions under the original ordinance, there is no case or controversy regarding the original ordinance. The Court will therefore determine the constitutionality of the amended ordinance.

23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). Because of the inherent dangers involved in regulating any type of expression, however, the Supreme Court has on several occasions revised and refined the definition of obscenity, in order to develop appropriate limits on the permissible scope of regulation. *See, e.g., Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Memoirs v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); *Miller v. California.* Under the current definition of obscenity, as set forth in *Miller v. California,* prohibitions on obscene materials must "be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller,* 413 U.S. at 24, 93 S.Ct. at 2614.

■ The ordinance in question in the instant case is not, of course, aimed at regulating materials which are obscene as to adults. Rather, the ordinance is designed to protect children from being exposed to sexually explicit material. While minors are entitled to a significant degree of first amendment protection, *see Tinker v. Des Moines School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Supreme Court has squarely held that a state or municipality may place stricter controls on materials available to youths than on those which are available to adults. *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). In *Ginsberg,* the Court upheld a New York law which prohibited the sale of non-obscene (as to adults), sexually explicit literature to minors under the age of 17. The Court approved the concept of "variable obscenity," holding that legislation may constitutionally adjust the definition of obscenity " 'to social realities by permitting the appeal of

... [sexually explicit] material to be assessed in terms of the sexual interests ...' of ... minors." *Id.* at 638, 88 S.Ct. at 1279, *quoting Mishkin v. New York,* 383 U.S. 502, 509, 86 S.Ct. 958, 963, 16 L.Ed.2d 56 (1966).

The Court in *Ginsberg* pointed to two governmental interests which justified the limitations on the availability of sexually explicit material to minors which were contained in the New York statute. First, the Court noted that "constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society," and that parents and others responsible for children's well-being "are entitled to the support of laws designed to aid discharge of that responsibility." 390 U.S. at 639, 88 S.Ct. at 1280. Second, the Court stated that government "has an independent interest in the well-being of its youth." *Id.* at 640, 88 S.Ct. at 1281. The Court quoted with approval the comments of Chief Judge Fuld of the New York Court of Appeals, in his concurring opinion in *People v. Kahan,* 258 N.Y.S.2d 391, 392, 15 N.Y.2d 311, 206 N.E.2d 333 (1965):

> While the supervision of children's reading may best be left to their parents, the knowledge that parental control or guidance cannot always be provided and society's transcendent interest in protecting the welfare of children justify reasonable regulation of the sale of material to them. It is, therefore, altogether fitting and proper for a state to include in a statute designed to regulate the sale of pornography to children special standards, broader than those embodied in legislation aimed at controlling dissemination of such material to adults.

390 U.S. at 640, 88 S.Ct. at 1281.[4] After reciting the above two government inter-

---

4. The Supreme Court has recognized the significant governmental interest in the protection of minors on a number of other occasions. *See, e.g., Prince v. Massachusetts,* 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944) ("[a] democratic society rests, for its continuance,

upon the healthy, well-rounded growth of young people into full maturity as citizens"); *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) (government's interest in "well-being of its youth" held to justify special treatment of indecent broadcasting received by

**1366**

ests, the Court applied a mere rationality standard to determine whether the legislature could constitutionally determine that exposure to the materials in question was in fact harmful to minors. It found that the legislature's determination was not irrational because existing studies had neither proved nor disproved a "causal link" between exposure of minors to sexually explicit material and impairment of their ethical and moral development. *Id.* at 641–643, 88 S.Ct. at 1281–82.

Justice Stewart, in his concurring opinion in *Ginsberg,* provided an additional theoretical justification for stricter regulation of the dissemination of sexually explicit materials to minors:

> I think a State may permissibly determine that, at least in some precisely delineated areas, a child—like someone in a captive audience—is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees.

*Id.* at 649–650, 88 S.Ct. at 1286–1287 (footnote omitted). Thomas Emerson, a commentator who is committed to the notion that "[n]o general restriction on expression in terms of 'obscenity' can ... be reconciled with the first amendment," relies on a variant of this "diminished capacity" theme to support his view that government has a broader power to regulate literature sold to children:

> Different factors come into play, also, where the interest at stake is the effect of erotic expression upon children. The world of children is not strictly part of the adult realm of free expression. The factor of immaturity, and perhaps other considerations, impose different rules. Without attempting here to formulate

the principles relevant to freedom of expression for children, it suffices to say that regulations of communication addressed to them need not conform to the requirements of the first amendment in the same way as those applicable to adults.

Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 938–39 (1963).

■ While children do not have first amendment rights co-extensive with adults, there are limits to government's ability to restrict the freedom of speech on the ground of protecting minors. In *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), the Supreme Court struck down as unconstitutionally overbroad an ordinance which prohibited the showing of films containing nudity by drive-in movie theaters with screens visible from a public street or place. The municipality attempted to support the ordinance as an exercise of its police power to protect children. The Court rejected this argument, reasoning that not all displays of nudity can be considered obscene even as to minors. The Court stated that "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Id.* at 213–14, 95 S.Ct. at 2274–75.

The challenged provision of the ordinance in the instant case, unlike the legislation in *Ginsberg,* deals primarily with the displaying of explicit sexual material rather than its distribution or sale,[5] and therefore raises slightly different first amendment questions.[6] Plaintiffs make four basic ar-

---

both children and adults); *New York v. Ferber,* 458 U.S. 747, 757, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1981) (government's interest in prevention of sexual exploitation and abuse of children justifies statute prohibiting distribution of visual materials depicting children engaged in sexual performances, regardless of whether material is obscene).

5. The ordinance does contain a prohibition against the sale to minors of materials deemed harmful to minors, § 385.131(4), but plaintiffs

have not challenged this aspect of the ordinance.

6. The United States Supreme Court has yet to deal squarely with the issues raised by display regulations such as the one in the instant case. The United States Court of Appeals for the Tenth Circuit recently upheld an ordinance which required an opaque cover but not a sealed wrapper for materials deemed harmful to minors. *M.S. News v. Casado,* 721 F.2d 1281 (10th Cir.1983). At least two state courts have

guments for why the display ordinance should be held unconstitutional. First, plaintiffs argue that the ordinance is impermissibly overbroad because it allows for separate consideration of the contents and cover of a work, and therefore fails to treat the work "as a whole." Second, plaintiffs contend that the ordinance unduly restricts the first amendment rights of adults, because it impedes adult access to materials which, while harmful to minors, are not obscene as to adults. Third, plaintiffs argue that the provision of the ordinance which exempts public libraries, churches, schools, and doctors violates the equal protection clause of the fourteenth amendment. Finally, plaintiffs argue that the provision exempting religious organizations constitutes an establishment of religion in violation of the first and fourteenth amendments. The Court will discuss each of these contentions in turn,[7] after an examination of the threshold question of standing.

## A. Standing

■ Plaintiffs must allege a "personal stake in the outcome of the controversy" in order to establish that they have standing to invoke the jurisdiction of the federal courts. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The standing requirement is designed "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Id.* In the instant case, defendant contends that plaintiffs have failed to demonstrate that they have standing to seek

declaratory and injunctive relief. Defendant points to the following facts to support its argument that plaintiffs lack standing. First, individual plaintiff Harvey Hertz merely alleges that he is the owner of A Brother's Touch Bookstore, and that this store is located in the city of Minneapolis. Second, the stipulation of facts entered into by the parties simply provides that the plaintiffs "*may* have material on display in their stores which would fall within the restrictions of the ordinance." Stipulation of Facts, ¶ 4 (emphasis added). Third, one of the members of plaintiff Upper Midwest Booksellers Associations [8] has stated in an affidavit that his bookstores do not contain any material which could be deemed "harmful to minors" as defined in the ordinance. Defendant contends that in light of the above facts, the claims of the plaintiffs are too speculative to justify the exercise of jurisdiction in this case. Defendant further argues that because the Upper Midwest Booksellers Association is a trade organization with merely economic purposes, it lacks standing to litigate the first amendment issues at stake in this case.

■ The Court finds that plaintiffs do have standing to seek declaratory and injunctive relief. Plaintiffs' allegations in the instant case are clearly more than "generalized grievances" which all citizens share. *See, e.g., Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). The Supreme Court has recognized that in first amendment cases involving a criminal penalty,

---

upheld similar display legislation. *American Booksellers Ass'n, Inc. v. Rendell*, —— Pa.Super. ——, 481 A.2d 919 (1984); *Capitol News Co., Inc. v. Nashville*, 562 S.W.2d 430 (Tenn.1978). A number of courts have, however, struck down such legislation as unconstitutionally overbroad when it sought to regulate material that is not obscene as to minors. *See, e.g., Rushia v. Town of Ashburnham*, 582 F.Supp. 900 (D.Mass.1983); *American Booksellers Ass'n, Inc. v. Superior Court*, 129 Cal.App.3d 197, 181 Cal.Rptr. 33 (1982); *Calderon v. Buffalo*, 61 App.Div.2d 323, 402 N.Y.S.2d 685 (1978). *See also American Booksellers Ass'n, Inc. v. Webb*, 590 F.Supp. 677

(N.D.Ga.1984) (display provision of ordinance containing constitutionally adequate definition of obscenity for minors temporarily enjoined).

7. Because the Court has determined that the exemption violates the equal protection clause, it does not reach the establishment arguments advanced by plaintiffs.

8. Don Blyly, proprietor of Uncle Edgar's Mystery Bookstore and Uncle Hugo's Science Fiction Bookstore, both located in the city of Minneapolis.

[i]t is not necessary that ... [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.

*Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).[9] The ordinance poses a genuine threat to booksellers and other retailers, since it obliges them to make judgments about whether to seal and cover materials in their store if they want to avoid criminal liability. This burden is a substantial one for both individual plaintiff Harvey Hertz and the Minneapolis member stores of plaintiff Upper Midwest Booksellers Association. While the ordinance's standard for "harmful to minors" is not subject to a constitutional challenge for vagueness, *see Miller v. California; Ginsberg v. New York,* neither is it simple to apply. The fact that the parties' stipulation states that plaintiffs *may* have proscribed materials in their stores, rather than that they *do* have such material, is not significant. Plaintiffs face criminal prosecution under the ordinance and would therefore understandably be reluctant to admit that they have materials that are harmful to minors in their stores. This is especially true given the ordinance's requirement that violations be "knowing." Finally, regardless of whether the plaintiffs ultimately prevail on their constitutional claims, the existence of the ordinance has a *potential* chilling effect on speech, so that the standing requirement is satisfied in this case. *See Cruz v. Ferre,* 571 F.Supp. 125, 129 (S.D.Fla.1983). The Court therefore finds that the plaintiffs possess the requisite "personal stake" in the outcome of this litigation.

 Defendant focuses much of its standing argument on the question of whether plaintiff Upper Midwest Booksellers Association has standing to sue as a representative of its member bookstores.

An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977). The prerequisites for associational standing set forth in *Hunt* are clearly present in the instant case. The Court has already discussed the question of whether individual bookstore members of the Upper Midwest Booksellers Association would have standing. With respect to the second part of the *Hunt* test, the present litigation is clearly germane to the purpose of Upper Midwest Booksellers Association—"improving the climate for bookselling, increasing the flow of information and encouraging more people to read." Plaintiffs' Complaint, ¶ 3. Finally, since the present action for declaratory and injunctive relief is a facial challenge to the constitutionality of the Minneapolis ordinance, made on the basis of a set of stipulated facts, there is no need for individualized proof, so that plaintiffs have satisfied the third part of the *Hunt* test. The Court notes that at least one other federal court has explicitly held that a bookseller's association similar to the plaintiff in the instant case has standing to raise the first amendment claims of its members, *American Booksellers Ass'n v. McAuliffe,* 533 F.Supp. 50 (N.D.Ga.1981). *See also American Booksellers Ass'n v. Rendell,* —— Pa.Super. ——, 481 A.2d 919, 932 (1984). Accordingly, the Court must reject defendant's standing arguments and proceed to determine the merita of this litigation.

**9.** The standing requirement has been considerably relaxed in the area of first amendment litigation. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–13, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). Individuals may challenge legislation even when their own rights of free expression are not violated, so long as the very existence of the legislation "may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612, 93 S.Ct. at 2915.

## B. Overbreadth

Plaintiffs initially argued that the ordinance is unconstitutionally overbroad because it prohibits the display of materials which are not obscene as to either adults or minors. While states and localities may adopt a broader definition of obscenity for children, *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the Supreme Court has clearly held that mere nudity is not obscene as to either minors or adults. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). Plaintiffs contended that under the plain language of section 385.131(6)(a), as originally enacted,[10] the ordinance applied to any material with mere nudity on its cover, regardless of whether that nudity is harmful to minors. Defendant argued that subdivision (6)(a) was intended to incorporate the harmful to minors standard, and that it was therefore not unconstitutionally overbroad. Subsequent to the hearing on plaintiffs' motion for preliminary and permanent injunctive relief, the Minneapolis City Council enacted an amendment to subdivision (6)(a) which explicitly provides that in order to trigger the requirements of the ordinance, the cover of a book or magazine must be harmful to minors. Accordingly, plaintiffs' argument that the ordinance is overbroad as to minors because it prohibits the display of material which is not obscene as to minors is now moot.[11]

Plaintiffs make a second argument that the ordinance is unconstitutionally overbroad which is unaffected by the recent amendment to subdivision (6)(a) of section 385.131. Plaintiffs contend that since the Supreme Court's decisions on obscenity require consideration of a work as "a whole," the ordinance's provision for separate consideration of the cover of a work and of its contents violates the first amendment. The Court recognizes that current constitutional standards do require

that a work must be considered as a whole, so that an isolated scene or passage, which would be obscene if standing alone, will not render a work obscene if it bears a rational relationship to the rest of the work. *Miller v. California; Ginsberg v. New York*. Despite this general standard for obscenity, which applies to both minors and adults, the Court cannot accept plaintiffs' argument. The context of speech is an important factor in determining the scope of permissible regulation. *Cf. Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503, 72 S.Ct. 777, 781, 96 L.Ed. 1098 (1952) (each medium of communication presents particular problems and demands different rules). The "as a whole" standard has been developed by the Supreme Court in the context of legislation which banned outright the distribution or possession of certain materials deemed obscene to either minors or adults. In such a context, it makes sense to treat the work as a whole, since the issue is whether it is appropriate for individuals to *purchase* and read or view the entire work. In the instant case, by contrast, the primary concern which prompted the legislation was the *display* of materials which are harmful to minors. A child who walks into a store which openly displays material with sexually explicit covers may be harmed simply by viewing those covers. In effect, to a child who may never acquire and read or view the entire work, the cover of the book or magazine is the "work as a whole."

Plaintiffs contend that the Supreme Court's decision in *Erznoznik* dictates a rejection of the argument that covers may be treated separately because a minor entering a store may only see the cover of a book. Plaintiffs maintain that a similar argument was made and rejected in *Erznoznik:* that to a motorist driving by a drive-in theater which has occasional displays of nudity, the nude scene constitutes

**10.** See footnote number 2 for the text of the original subsection 6(a).

**11.** Counsel for both parties have advised the Court that they agree that the effect of the amendment to the ordinance is to moot plaintiffs' argument that the ordinance is overbroad because it would prohibit the display of mere nudity.

the "whole work" to that viewer. The shortcoming in this argument is that the basis of the Supreme Court's decision in *Erznoznik* was that the drive-in movie ordinance was overbroad because mere nudity is not obscene as to adults *or* minors. In the instant case, under the plain language of the ordinance, the only covers which are regulated are those which *are* harmful to minors. The Court must therefore reject plaintiffs' argument that the ordinance is overbroad because it fails to treat works "as a whole."

## C. Impact of the ordinance on adults' first amendment rights

Plaintiffs contend that the ordinance is overbroad as to adults because it unduly restricts the availability of materials which are clearly protected by the first amendment. Plaintiffs' argument is that there is a category of material which, while admittedly harmful to minors, is not obscene as to adults. Because of the ordinance's display restrictions, adult access to this category of material is circumscribed to some extent. First, plaintiffs contend that the requirement of an opaque cover restricts the ability of adults to view the cover of books or magazines that fall within the scope of the ordinance. Second, and more important, plaintiffs argue that the requirement of a sealed wrapper would prevent adults from thumbing through the book or magazine prior to deciding whether or not to purchase it.

Plaintiffs contend that the restrictive impact of the ordinance places it squarely within the Supreme Court's holding in *Butler v. Michigan,* 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957). In *Butler,* a unanimous Supreme Court struck down a statute which made it unlawful "to make available for the general reading public ... a book ... found to have a potentially deleterious influence upon youth." 352 U.S. at 382–83, 77 S.Ct. at 525. The Court found that this legislation was "not reasonably restricted to the evil with which it is said to deal," *id.* at 383, 77 S.Ct. at 526, since it prohibited

the distribution of protected material to adults. The effect of the statute, according to the Court in *Butler,* was "to reduce the adult population of Michigan to reading only what is fit for children." *Id.*

Plaintiffs clearly overstate their case somewhat when they claim that the instant case poses the same problem that the Supreme Court was faced with in *Butler.*[12] The Minneapolis ordinance, unlike the statute in *Butler,* does not prohibit adults from purchasing non-obscene materials; adults continue to have ultimate access to the materials in question. Moreover, adults may peruse these materials in "adults only" bookstores or in "adults only" sections of stores open to both minors and adults. Finally, adults may thumb through the contents of publications which are required under the ordinance to have only their covers blocked from view. Despite these factors which distinguish the instant case from *Butler,* the ordinance clearly does infringe to some extent on adults' access to materials which are protected under the first amendment. Defendant argues that the restrictions imposed by the ordinance are justifiable time, place, and manner regulations.

■■ The Supreme Court has held on a number of occasions that a state or municipality may protect individual privacy by enacting *content neutral* time, place, and manner regulations of speech. *Erznoznik v. City of Jacksonville; Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (limitation on use of sound trucks); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (ban on willful making, on grounds adjacent to school, of any noise which disturbs the good order of the school session). When government sheds its neutrality, however, and "undertakes selectively to shield the public from some kinds of speech on the ground that they are more offensive than others, the First Amendment strictly limits its power." *Erznoznik,* 422 U.S. at 209, 95 S.Ct. at 2272. Plaintiffs contend that the

12. *But see Hillsboro News Co. v. City of Tampa,* 451 F.Supp. 952, 954 (M.D.Fla.1978).

Minneapolis ordinance is such an impermissible attempt at content based regulation, since it selects a particular category of speech.

While content neutral regulation is a fundamental principle of first amendment law that should not be lightly abandoned, the Supreme Court has on a number of occasions considered the content of speech in the course of determining the scope of permissible regulation. *See, e.g., Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (public transit system may accept product advertising and reject political advertising); *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (Stewart, J. concurring) (difference between commercial advertising and ideological communication permits regulation of former that would be impermissible with respect to latter); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (city may enact restrictive zoning ordinance that applies only to "adult" movie theaters). "Selective" time, place, and manner restrictions have been upheld when the speaker intrudes on the privacy of the home, *Rowan v. Post Office Dept.,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), or when it is impractical for a captive audience to avoid exposure, *Lehman v. City of Shaker Heights. See also Young v. American Mini Theatres, Inc.,* 427 U.S. at 85–86, 96 S.Ct. at 2459–2460 (Stewart, J. dissenting) (first amendment requires "that time, place, and manner regulations that affect protected expression be content neutral *except in the limited context of a captive or juvenile audience*" (emphasis added)).

The fact that the display regulations in the ordinance are not strictly content neutral, then, does not necessarily mean that they are constitutionally invalid. Plaintiffs' challenge to the display regulation requires the Court to balance the city's interest in protecting minors from sexually explicit material against adults' right to read or view material protected by the first

amendment. In balancing these competing concerns, the significant issue is whether the display regulations are sufficiently narrowly tailored to the governmental interest. There is no question that the city has a significant interest in shielding minors from sexually explicit material which falls within the constitutional definition of obscenity for minors. *Ginsberg.* The requirement of an opaque cover directly furthers that interest. *See American Booksellers Association v. Rendell,* —— Pa.Super. ——, 481 A.2d 919, 942 (1984) ("regulation of sales without control over commercial displays of materials deemed harmful to minors would render" efforts to protect the psychological well-being of youth meaningless). Moreover, on the other side of the balance, the opaque cover requirement imposes a minimal infringement on adults' first amendment rights. Under the ordinance, adults may still view the contents of materials that have only covers which are harmful to minors. The Court agrees with the reasoning in *M.S. News v. Casado,* 721 F.2d 1281 (10th Cir.1983), in which the Tenth Circuit recognized that an opaque cover requirement would to some degree restrict the viewing by adults of protected material, but upheld such a restriction on the ground that it was reasonable, in that adults continued to have some access to this material and could still purchase such material.

While the Court subscribes to the reasoning of the Tenth Circuit in *M.S. News,* it recognizes that the Minneapolis ordinance is more restrictive than the ordinance in that case, since the Minneapolis ordinance provides for sealed wrappers as well as opaque covers. A sealed wrapper obviously works a greater restriction on adult access than does a simple opaque cover. Nevertheless, adults who desire to peruse the contents of materials which are deemed harmful to minors prior to purchasing them do have a number of options under the ordinance. Adults continue to have wholly unimpeded access to sexually explicit materials in stores which exclude minors and in stores which have segregat-

ed "adults only" sections. Second, nothing in the ordinance precludes retailers from keeping "inspection copies" of proscribed material behind the counter. Finally, an adult customer can request that a sealed wrapper be removed in order to allow inspection of the contents of a particular book or magazine covered by the ordinance. The Court finds that these options represent an appropriate accommodation between the city's strong interest in protecting minors from exposure to sexually explicit material and adult first amendment rights.

The Court's determination that the Minneapolis ordinance is a reasonable time, place, and manner regulation is supported by the Supreme Court's decision in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In *Young*, the Supreme Court was faced with a challenge to a zoning ordinance which required that "adult" motion picture theatres not be located within 1,000 feet of any other such establishment or within 500 feet of a residential area. A plurality of the Court recognized that this was content based regulation, but upheld the ordinance because the city had a sufficient interest in preserving the quality of urban life, because society's interest in protecting erotic speech is of a lesser magnitude than its interest in protecting political speech, and because the ordinance regulated the place of unlawful speech without suppressing it. Justice Powell concurred in the judgment. While he disagreed that erotic materials can be treated differently than other forms of speech, he voted to uphold the zoning ordinance because of the minimal impact which it had on the freedom of expression. Justice Powell noted that

> The ordinance is addressed only to the places at which this type of expression may be presented, a restriction that does not interfere with content. Nor is there

any significant overall curtailment of adult movie presentations, or the opportunity for a message to reach an audience.

427 U.S. at 78–79, 96 S.Ct. at 2456.

The opinion in *Young* provides strong support for the conclusion that the Minneapolis ordinance's sealed wrapper requirement presents a mere inconvenience to adults who wish to look at sexually explicit materials before purchasing them, rather than an unconstitutional restriction. The requirement of a wrapper does not limit the creators of sexually explicit materials in any way. Moreover, adults may continue to browse through sexually explicit materials in stores which are "adults only" or which have "adults only" sections; in a sense, the ordinance simply regulates the place in which adults may have totally unrestricted access to these materials, and the manner in which retailers may display such materials. While some adults may be minimally inconvenienced by the ordinance, any such inconvenience is outweighed by the city's strong interest in protecting minors from being exposed to sexually explicit material. The Court's determination in this regard does not rest on a judgment that erotic or sexually explicit materials are entitled to a lesser magnitude of first amendment protections than other types of speech.[13] Rather, the Court believes that the restrictions contained in the ordinance are sufficiently narrowly tailored to the governmental interest.

Plaintiffs argue that the most serious reduction in adult access to protected materials caused by the ordinance is that which will result from the self-censoring behavior of retailers. Plaintiffs contend that the ordinance imposes a particularly onerous burden on retailers since separate decisions must be made with respect to whether the covers and the contents of books or magazines are harmful to minors. The effect of

---

**13.** The Court does take note of the fact, however, that the expression involved in this case is not of the type in which the effectiveness or the content of the message depends upon where or how it is conveyed. *Cf. Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965);

*Brown v. Louisiana*, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). *See Young v. American Mini Theatres*, 427 U.S. at 78, 96 S.Ct. at 2456.

the ordinance, according to plaintiffs, will be that retailers, wary of prosecution, will avoid all materials having anything to do with sex, thereby depriving adults of access to protected materials. This argument is of little merit. First, plaintiffs concede that the "harmful to minors" definition in the ordinance comports with the requirements of the Constitution as set forth in *Miller v. California* and *Ginsberg v. New York,* so that retailers are not being asked to make a particularly novel judgment. Second, the ordinance requires that violations of its provisions must be "knowing" before a retailer will be subject to criminal prosecution. § 385.131(6). This scienter requirement undercuts the argument that retailers would practice self-censorship, since retailers are not required by the ordinance to be aware of the contents of every book or magazine in their shop. *See American Booksellers Association, Inc. v. Rendell,* — Pa.Super. ——, 481 A.2d 919, 941 (1984). The Court notes that the case which plaintiffs rely on to support their access argument, *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), involved an obscenity ordinance which did not contain a scienter requirement.

While the Minneapolis ordinance does impose some limitation on adult access to protected material, then, the Court finds that any such infringement on adults is minimal, and clearly outweighed by the city's substantial interest in protecting the well being of minors. Moreover, while the ordinance is content based in the sense that it regulates only sexually explicit materials, it does not place any limitations on the creators of such materials, and its restrictions are narrowly tailored to the city's interest in protecting children. The ordinance is therefore a constitutionally valid time, place, and manner restriction. Finally, since the ordinance's definition of "harmful to minors" is not subject to constitutional attack on vagueness or overbreadth grounds, and since the ordinance forbids only knowing violations, the Court must reject plaintiffs' argument that adult access to protected material will be uncon-

stitutionally restricted as a result of retailer self-censorship.

## D. Equal protection

The Minneapolis ordinance provides that the following entities and individuals are exempt from criminal prosecution under the ordinance:

Recognized and established schools, religious institutions, museums, medical clinics and physicians, hospitals, public libraries, governmental agencies or quasi governmental sponsored organizations, and persons acting in their capacity as employees or agents of such organization. For the purpose of this section "recognized and established" shall mean an organization or agency having a full time faculty and diversified curriculum in the case of a school; a religious institution affiliated with a national or regional denomination; a licensed physician or psychiatrist or clinic of licensed physicians or psychiatrist; and in all other exempt organizations shall refer only to income tax exempted organizations which are supported in whole or in part by tax funds or which receive at least one third of their support from publicly donated funds.

§ 385.131(7)(a). Plaintiffs argue that this classification violates the equal protection clause. They contend that the appropriate standard of review for the ordinance's classification is the strict scrutiny test, so that the classification must be struck down unless defendant can establish that it is necessary to a compelling governmental interest. *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). Plaintiffs argue that defendant has totally failed to meet this standard. Alternatively, plaintiffs argue that the classification would fail even under the more lenient rational basis test. Finally, plaintiffs contend that if the Court holds that the classification violates the equal protection clause, it should strike down the entire ordinance rather than simply sever the offending provision.

Defendant contends that the exemption should be upheld if it is found to be rationally related to a legitimate governmental interest. *M.S. News v. Casado*, 721 F.2d at 1291. Defendant argues that the city has a legitimate interest in controlling or limiting the effects on minors of commercialized obscenity. The exemption for churches, schools, libraries, and other groups is rationally related to this interest, according to defendant, because it allows parents to expose their children to sexually explicit materials in a controlled, non-exploitive manner. Defendant views the institutions that are exempt under the ordinance as "agents" of the parent.

In *M.S. News v. Casado*, the Tenth Circuit rejected an equal protection challenge to a display ordinance similar to the Minneapolis ordinance. The court in *M.S. News* applied the rational basis test to a section of the ordinance which provided an affirmative defense to churches, schools, libraries, and various other non-commercial entities.[14] It noted first that the Supreme Court has recognized that there are " 'legitimate state interests at stake in stemming the tide of commercialized obscenity....' " *M.S. News*, 721 F.2d at 1291, quoting *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). The Court then held that the distinction between commercial and non-commercial institutions which was drawn by the ordinance bore a rational relationship to that legitimate governmental interest: "Commercial enterprises have the economic incentive to make sales and are therefore more likely to press the display and dissemination of material harmful to minors." 721 F.2d at 1291–92. The Tenth Circuit quoted the following passage from the Supreme Court's decision in *Ginsberg v. New York* to support its contention that the rational basis test was the appropriate equal protection standard:

To sustain state power to exclude material defined as obscenity by § 484–h requires only that we be able to say that it was not irrational for the legislature to find that exposure to material condemned by the statute is harmful to minors.

390 U.S. at 641, 88 S.Ct. at 1281.

The Court believes that the Tenth Circuit applied the wrong equal protection standard in *M.S. News*. The Supreme Court has held on a number of occasions that the strict scrutiny test is the proper standard whenever government classifies individuals' ability to exercise a fundamental right such as speech. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). In *Salem Inn, Inc. v. Frank*, 522 F.2d 1045, 1049 (2d Cir.1975), a case cited by plaintiffs, the court applied the strict scrutiny standard and held that an ordinance which prohibited nude dancing in bars, lounges, coffee shops and discotheques, but not in theatres, opera houses, and concert halls, violated equal protection. The strict scrutiny standard should similarly be applied to the classification in the instant case. The Supreme Court's reference to a mere rationality standard in *Ginsberg* is not contrary to this conclusion. The passage from *Ginsberg* which the Tenth Circuit relied on simply means that courts should not second-guess a legislative judgment that exposure to sexually explicit material is harmful to minors. The question in the instant case is the entirely different one of the extent to which the court should scrutinize a legislative classification which permits certain groups and individuals to exhibit materials already judged to be harmful to minors.

 The exemption in the Minneapolis ordinance cannot withstand the strict scrutiny test. The purpose of the exemption, according to defendant, is to allow parents

14. For other decisions which applied the rational basis test to similar classifications, *see State v. Luck*, 353 So.2d 225 (La.1977); *City of Duluth v. Sarette*, 283 N.W.2d 533 (Minn.1979); *Wheeler v. State*, 281 Md. 593, 380 A.2d 1052 (App.1977) (all involving exemptions to general obscenity statutes). In each of these cases, however, the court found that there was no rational basis for an exemption for schools, libraries, churches, and other non-commercial institutions.

to expose their children to sexually explicit material in a controlled context that is free of "pandering." This asserted purpose harmonizes with the overall purpose of the ordinance—controlling the effects of commercialized obscenity on minors. While the Court does not question the substantiality of the governmental interest behind the ordinance's exemption, it cannot find that the classification created by the exemption is *necessary* to that interest. *Shapiro v. Thompson.* The ordinance provides for criminal penalties only in those cases in which an individual *commercially* exhibits or displays material that is deemed harmful to minors. § 385.131(6), (6)(a). The individuals and organizations listed in the exemption, then, are free to utilize sexually explicit material for sex education or other non-commercial purposes. The exemption from criminal liability is therefore wholly unnecessary to the governmental interest in allowing parents and their "agents" to expose children to sexual materials in a controlled setting, since such activity is permissible under the ordinance. If churches, schools, libraries, or any of the other exempt groups were to *commercially* display or exhibit material that is harmful to minors as defined in the ordinance, they would be engaging in the very conduct that the ordinance seeks to regulate. Defendant does not argue, and indeed there can be no rational argument, that a minor would suffer less harm from a commercial display of sexually explicit material by a school, library, or church than from the same display by a traditional retailer. In sum, the defendant has failed to demonstrate any substantial reason for the ordinance's exemption, let alone that the classification created by the ordinance is necessary to a compelling governmental interest. The exemption therefore violates the equal protection clause of the fourteenth amendment.

Plaintiffs argue that if the exemption provision is held to violate the equal protection clause, then the Court may not simply sever the exemption, but rather must strike down the entire ordinance. The Court cannot agree. In *City of Duluth v. Sarette,* 283 N.W.2d 533 (Minn.1979), the Minnesota Supreme Court invalidated a similar exemp-

tion to a general obscenity ordinance, and held that it was appropriate to sever the invalidated portion. The intent of the exemption provision in *Sarette* was to permit the exempt organizations to disseminate or utilize obscene material for legitimate educational, scientific, or artistic purposes without fear of criminal prosecution. The Minnesota Supreme Court held that in view of the test for obscenity set forth in *Miller v. California,* which includes a consideration of whether material has serious literary, artistic, political, or scientific value, the exemption was unnecessary. The court therefore held that it could sever the exemption without defeating the intent of the legislature. 283 N.W.2d at 537.

The analysis employed in *Sarette* is applicable to the instant case. As set forth above, the intent of the exemption provision in this case is to permit the exempt organizations to display sexual materials to minors in a non-commercial context, thereby furthering parental control over their children's sex education. Since the ordinance provides for criminal prosecution in only those cases in which there is a commercial display, the Court can sever the exemption provision without defeating the intent of the council. The constitutionally deficient provision is superfluous. Accordingly, the Court will sever section 381.131(7)(a) from the rest of the ordinance.

**CONCLUSION**

The people of Minneapolis, acting through their elected City Council, are entitled to provide protection to their children from materials that are harmful to minors. The Court finds, as construed by this opinion, that this ordinance affords such protection within the limits of the United States Constitution.

Therefore, IT IS ORDERED that:

1. section 385.131(7)(a), the exemption provision of the ordinance, is declared unconstitutional and is severed from the remainder of Minneapolis Ordinance § 381.131;

2. defendant is preliminarily and permanently enjoined from enforcing section 385.131(7)(a); and

3. plaintiffs' motion for a preliminary and permanent injunction restraining the use and enforcement of the ordinance, together with its request for a declaratory judgment, is in all other respects denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## APPENDIX

Title 15, section 385.131 of the Minneapolis Code of Ordinances provides as follows:

*Distribution of Materials Harmful to Minors*

(1) In enacting this section, the city council declares its purposes and intent to be as follows:

There exists an urgent need to prevent commercial exposure of minors to sexually provocative written, photographic, printed, sound, or published materials as these are hereafter defined and which are hereby declared to be harmful to minors.

(2) It is in the best interest of the health, welfare, and safety of the citizens of this city and state, and especially of minors within the city and state, that commercial dissemination of such sexually provocative written, photographic, printed, sound, or published materials deemed harmful to minors be restricted to persons over the age of 17 years; or if available to minors under the age of 18 years, that the availability of such materials be restricted to sources within established and recognized schools, religious institutions, museums, medical clinics and physicians, hospitals, public libraries, the minor's home, or government sponsored organizations.

(3) As used in this section, the terms defined in this subdivision have the meanings given them:

(a) "Minor" means any person under the age of 18 years;

(b) "Nudity" means the showing of the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state;

(c) "Sexual Conduct" includes any of the following depicted sexual conduct:

(i) Any act of sexual intercourse, actual or simulated, including genital-genital, anal-genital, or oral-genital intercourse, whether between human beings or between a human being and an animal.

(ii) Sadomasochistic abuse, meaning flagellation or torture by or upon a person who is nude or clad in undergarments or in a revealing costume or the condition of being fettered, bound, or otherwise physically restricted on the part of one so clothed.

(iii) Masturbation or lewd exhibitions of the genitals including any explicit, close-up representation of a human genital organ.

(iv) Physical contact or simulated physical contact with the clothed or unclothed pubic areas or buttocks of a human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

(v) An act of sexual assault where physical violence or drugs are employed to overcome the will of or achieve the consent of a person to an act of sexual conduct and the effects or results of the violence or drugs are shown.

(d) "Sexual Excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal;

(e) "Harmful to Minors" means that quality of any description or representation, in whatever form, of nudity, sexual conduct, or sexual excitement, when it:

(1) predominantly appeals to the prurient, shameful, or morbid interest of minors in sex; and

(2) is patently offensive to contemporary standards in the adult community as a whole with respect to what is suitable sexual material for minors; and

(3) taken as a whole, lacks serious literary, artistic, political or scientific value.

(f) "Knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry or both:

(1) the character and content of any material which is reasonably susceptible of examination by the defendant; and

(2) the age of the minor, provided however that an honest mistake shall constitute an excuse from liability hereunder if the defendant made a reasonable bona fide attempt to ascertain the true age of such minor.

(4) It is unlawful for any person knowingly to sell or loan for monetary consideration to a minor:

(a) Any picture, photograph, drawing, sculpture, motion picture film, video tape, or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sexual excitement and which is harmful to minors.

(b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in clause (a), or which contains explicit and detailed verbal descriptions or narrative accounts of nudity, sexual excitement, or sexual conduct and which taken as a whole is harmful to minors.

(5) It is unlawful for any person knowingly to exhibit for a monetary consideration to a minor or knowingly to sell to a minor an admission ticket or pass or knowingly to admit a minor for a monetary consideration to premises whereon there is exhibited, a motion picture show or other presentation which, in whole or in part, depicts nudity, sexual conduct, sexual excitement and which is harmful to minors.

(6) It is unlawful for any person commercially and knowingly to exhibit, display, sell, offer to sell, give away, circulate, distribute, or attempt to distribute any material which is harmful to minors in its content in any place where minors are or may be present or allowed to be present and where minors are able to view such material unless each item of such material is at all times kept in a sealed wrapper.

(a) It is also unlawful for any person commercially and knowingly to exhibit, display, sell, offer to sell, give away, circulate, distribute, or attempt to distribute any material whose cover, covers, or packaging, standing alone, is harmful to minors, in any place where minors are or may be present or allowed to be present and where minors are able to view such material unless each item of such material is blocked from view by an opaque cover. The requirement of an opaque cover shall be deemed satisfied concerning such material if those portions of the cover, covers, or packaging containing such material harmful to minors are blocked from view by an opaque cover.

(b) The provisions of this subdivision shall not apply to distribution or attempt to distribute the exhibition, display, sale, offer of sale, circulation, giving away of material harmful to minors where such material is sold, exhibited, displayed, offered for sale, given away, circulated, distributed, or attempted to be distributed under circumstances where minors are not present, not allowed to be present, or are not able to view such material or the cover, covers, or packaging of such material. Any business may comply with the requirements of this clause by physically segregating such material in a manner so as to physically prohibit the access to and view of the material by minors, by prominently posting at the entrance(s) to such restricted area, "Adults Only—you must be 18 to enter," and by enforcing said restrictions.

(7) The following are exempt from criminal or other action hereunder:

(a) Recognized and established schools, religious institutions, museums, medical clinics and physicians, hospitals, public libraries, governmental agencies or quasi governmental sponsored organi

zations, and persons acting in their capacity as employees or agents of such organization. For the purpose of this section "recognized and established" shall mean an organization or agency having a full time faculty and diversified curriculum in the case of a school; a religious institution affiliated with a national or regional denomination; a licensed physician or psychiatrist or clinic of licensed physicians or psychiatrists; and in all other exempt organizations shall refer only to income tax exempted organizations which are supported in whole or in part by tax funds or which receive at least one third of their support from publicly donated funds.

(b) Individuals in a parental relationship with the minor.